**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**GRAHAM A. S.,**

**Plaintiff,**

**v.**

**Civil Action 1:26-cv-312**
**Judge Douglas R. Cole**
**Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

**REPORT AND RECOMMENDATION**

Plaintiff, Graham A. S. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for a period of disability and disability benefits ("DIB") and supplemental security income ("SSI"). This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 8), the Commissioner's Memorandum in Opposition (ECF No. 9), Plaintiff's Reply (ECF No. 11), and the administrative record (ECF No. 7). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

## I. BACKGROUND

Plaintiff filed his DIB and SSI applications in July 2022, alleging that he became disabled beginning July 28, 2022. (R. at 200–11, 212–13, 214–20.) Plaintiff's applications were denied initially and upon reconsideration and at the hearing level by an Administrative Law Judge

("ALJ") on April 4, 2024. (*Id*. at 7–24.) Plaintiff subsequently sought judicial review in this Court before the parties jointly moved to remand the matter. (*Id*. at 646–52, 644–45.)

Upon remand, another ALJ, Maria Hodges ("ALJ Hodges"), held a telephonic hearing on January 14, 2026, at which Plaintiff, who was represented by counsel appeared and testified. (*Id*. at 588–611.) A vocational expert ("VE") also appeared and testified. On January 24, 2026, ALJ Hodges issued a second unfavorable determination, which became final after Plaintiff apparently did not file exceptions and the Appeals Council did not review it. (*Id*. at 565–87.)

Plaintiff seeks judicial review of that second unfavorable determination. He contends that the ALJ reversibly erred when evaluating medical opinion evidence. (Pl.'s Statement of Errors 8–15, ECF No. 8.) The undersigned concludes that this contention of error lacks merit.

## II. THE ALJ'S DECISION

The ALJ issued the unfavorable determination on January 24, 2026. (R. at 565–87.) ALJ Hodges initially determined that Plaintiff met the insured status requirements through September

30, 2025. (R. at 571.) At step one of the sequential evaluation process,[1] ALJ Hodges found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of January 31, 2022. (*Id.*) At step two, the ALJ found that Plaintiff had the following severe medically determinable impairments: bipolar disorder; depression; attention deficit disorder (ADHD); generalized anxiety disorder; borderline intellectual functioning (BIF); and obsessive-compulsive disorder (OCD). (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. 572.)

The ALJ then set forth Plaintiff's residual functional capacity ("RFC")[2] as follows:

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

> 1. Is the claimant engaged in substantial gainful activity?
>
> 2. Does the claimant suffer from one or more severe impairments?
>
> 3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
>
> 4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
>
> 5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[2] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations" "on a regular and continuing basis." 20 C.F.R. §§ § 404.1545(a)(1), (b)–(c); 416.945(a)(1), (b)–(c).

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: can understand, remember, and carry out simple instructions; can perform work without a specific production rate pace, such as an assembly line or hourly production quotas; can make simple work-related decisions; can deal with occasional changes in the work setting; can interact occasionally and superficially with others with no over the shoulder supervision or tandem tasks, with superficial defined as mean the ability to receive simple instructions and ask simple questions of others, and receive performance appraisals but lacks the ability to engage in more complex social interactions such as persuading other people or rendering advice.

(*Id*. at 573.)

At step four, the ALJ relied on testimony from the VE to determine that Plaintiff had no past relevant work. (*Id*. at 578.) Relying again on the VE's testimony at step five, the ALJ determined that considering his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including the representative jobs of warehouse worker, floor cleaner, and price marker. (*Id*. at 578–79.) Accordingly, the ALJ determined that Plaintiff was not disabled as defined in the Social Security Act during the relevant time frame. (*Id*. at 579.)

## III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Although this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Though the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y of Health & Hum. Serv.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV. ANALYSIS

As explained above, Plaintiff contends that ALJ Hodges committed reversible error when evaluating medical opinion evidence. (Pl.'s Statement of Errors 8–15, ECF No. 8.) Specifically, he challenges her evaluation of an opinion from his treating psychiatrist, Dr. Shivani. The undersigned concludes that Plaintiff's contention lacks merit.

### A. The Evaluation of Medical and Other Types of Evidence

An ALJ's RFC determination must be "based on all the relevant evidence" in a claimant's case record. §§ 404.1545(a)(1); 416.945(a)(1). The governing regulations[3] describe five categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other

[3] Because Plaintiff's applications were filed in 2022, they are subject to regulations governing applications filed after March 27, 2017.

medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5). An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering those categories of evidence: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program s policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

Although there are five factors, supportability and consistency are the most important, and an ALJ must explain how they were considered. *Id.* With regard to supportability "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[ ] . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1). For consistency, "[t]he more consistent a medical opinion[ ] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[ ] . . . will be." 20 C.F.R. §§ 404.1520c(c)(2); 416.920c(c)(2).

**B. Dr. Shivani's Medical Opinion**

On April 7, 2023, Dr. Shivani completed a medical source statement. (R. at 497–99.) In that check-box form, Dr. Shivani marked that Plaintiff had moderate to marked social interaction limits. (*Id*. at 497.) Dr. Shivani marked that those moderate social interaction limits would not change even if Plaintiff had only minimal contacts or interactions with others. (*Id*.)

Dr. Shivani also marked that Plaintiff had moderate to marked concentration and persistence and adaptation limits. (*Id*. at 498–99.) He marked that Plaintiff "was likely" to miss two or more partial or full workdays each month. (*Id*. at 499.) He marked too that Plaintiff's condition "was likely" to deteriorate under workplace stress and wrote that this was "due to underlying mood disorder and ADHD" and noted that Plaintiff had "failed multiple jobs – unable to do." (*Id*.)

Finally, when asked to note any other work-related limitations, Dr. Shivani wrote that Plaintiff "suffers from chronic mental illness bipolar disorder – mood swings with periods of depression" and "ADHD which affect concentration and stay focused." (*Id*.) He additionally wrote that "seeing his past failures with multiple job attempts–need assistance–unable to do any work related activities (*sic*)." (*Id*.)

**C. ALJ Hodges's Analysis**

ALJ Hodges began by summarizing Dr. Shivani's opinion. She wrote as follows:

> Ramesh Shivani, M.D., submitted a statement in April 2023 noting the claimant had moderate impairment interacting with co-workers and the public but would have marked impairment accepting criticism from supervisors. Dr. Shivani went on to state the claimant would have generally moderate impairment performing work tasks and carrying out instructions but would have marked impairment in performing at production levels expected by most employers. Dr. Shivani indicated the claimant would also have marked impairment responding appropriately to changes in a work setting, behaving in an emotionally stable manner, and tolerating customary work pressures but would only have mild impairment being aware of hazards in the workplace and maintaining personal hygiene. Dr. Shivani also noted the claimant would have moderate impairment remembering locations, workday procedures, and instructions. Lastly Dr. Shivani indicated the claimant has an inability to do any work-related activities due to his chronic mental illness and past failures at work attempts (7F/1-3).

(*Id*. at 577.)

ALJ Hodgess then determined that Dr. Shivani's opinion was not persuasive. She wrote as follows:

> The undersigned finds this opinion not persuasive, as not supported by their exam and treatment of the claimant. Dr. Shivani's treatment notes often described the claimant as doing well with stable symptoms (Exhibit 7F/7- 8, 13-14). His mental status examination notes also described the claimant's insight and judgment as adequate along with a treatment plan that continued the claimant on the same medication with follow-up appointments every three months, not indicative of marked impairment that would need changing treatment (Exhibit 7F/7-21). This opinion is inconsistent with the claimant's reports to other treatment providers that his mental health symptoms were largely non-existent and well managed on his current medication regimen (Exhibit 3F/8, 19). Overall, his mental status exams showed findings within normal limits. The claimant also reported his bipolar disorder was well managed by medication including Lithium, and treatment notes continued to describe the claimant's ADD as stable on prescribed Adderall. He also reported mood symptoms stable, no significant mood swings, no depressive symptoms, and he was compliant with all medication. Additionally, the claimant reported his medication helped with controlled attention, focus, organization, and impulsivity (Exhibits 2F, 3F, 5F – 7F, 11F, 12F, 14F, 17F). Furthermore, while treatment notes from Dr. Shivani indicate the claimant's struggle maintaining employment with the same employer, the claimant's earnings record reveals the claimant's ability to work for Columbus Industries for two stretches of time, once from 2010 through 2013 and again from 2019-2020. The claimant also maintained employment with Adams County Hospital from 2016 through 2018, indicating he was capable of staying at a job for a period of time in the past (Exhibit 10D).

(*Id.*) As this discussion demonstrates, ALJ Hodges considered the supportability and consistency factors and found them lacking.

**1. Supportability**

ALJ Hodges determined that Dr. Shivani's opinions were not supported by his own treatment notes in multiple ways. (*Id.*)

First, ALJ Hodges explained that Dr. Shivani's treatment notes often described Plaintiff as doing well with stable symptoms. (*Id.*) Substantial evidence supports that explanation. Dr. Shivani regularly wrote in his notes that his impression was that Plaintiff's mental health conditions were stable, or stable or well controlled with medications. (*Id.* at 343, 341, 436, 508, 504, 564, 562, 560, 927, 932, 941, 1153.)

Second, ALJ Hodges explained that Dr. Shivani's treatment notes reflected that Plaintiff also consistently described his symptoms as stable or well controlled. (*Id*. at 577.) Substantial evidence supports that explanation as well. For instance, Plaintiff reported doing well on his medications in March 2022; stated in June 2022 that all was "going well" and that his mood was "pretty good;" and in September 2022, he indicated that his symptoms remained stable. (*Id*. at 342, 340, 435.) In December 2022, he reported doing well despite situational stressors and was enjoying family time and having stable ADHD symptoms with his medications. (*Id*. at 506.) Plaintiff continued to report doing well with stable symptoms in March, June, and September 2023. (*Id*. at 503, 563, 561.) Similarly, throughout 2024 and 2025, Plaintiff regularly described his mood and symptoms as stable, denied significant depressive symptoms or mood swings, and reported that his ADHD was well controlled with medication. (*Id*. at 914, 918, 921, 925, 930, 934, 939, 1151.) And in January 2026, despite situational stressors, Plaintiff reported that his mood remained overall stable, and he denied mood swings or depressive symptoms. (*Id*. at 1151.)

ALJ Hodges also explained that Dr. Shivani's opinions were not supported by his treatment notes for a third reason—the notes documented largely unremarkable mental status examination findings. (*Id*. at 577.) Substantial evidence likewise supports that explanation. Dr. Shivani sometimes noted that upon examination, Plaintiff's mood was anxious. (*Id*. at 564, 561.) But Dr. Shavani regularly noted that Plaintiff's mood was okay or normal, and that his affect was full or fine. (*Id*. at 342, 340, 435, 507, 504, 564, 561, 559, 916, 919, 923, 927, 932, 936, 940, 1152.) And as ALJ Hodges accurately observed, Dr. Shivani also regularly found that Plaintiff had fair or adequate insight and judgment. (*Id*. at 342, 340, 435, 507, 504, 561, 560, 916, 919, 923, 927, 932, 936, 941, 1153.)

Finally, ALJ Hodges explained that Dr. Shivani's opinions were not supported by his notes because they documented a relatively moderate treatment plan. (*Id*. at 577.) Substantial evidence supports that explanation. ALJ Hodges accurately noted that Dr. Shivani generally continued Plaintiff's medications and recommended follow-up appointments every three months. (*See, e.g.*, *Id*. at 917, 920, 925, 929, 933, 938.) Plaintiff nevertheless contends that ALJ Hodges' discussion of this evidence was "needless" because Dr. Shivani did not opine that Plaintiff was limited because he needed his treatments changed. (Pl.'s Statement of Errors 13, ECF No. 8.) But ALJ Hodges did not indicate that Dr. Shivani's opined limits were based on changes to Plaintiff's treatments. Instead, ALJ Hodges implicitly reasoned that a relatively moderate course of treatment undermined the restrictive limits opined by Dr. Shivani. (*Id*. at 577.)

Plaintiff also contends, for the first time in his Reply, that ALJ Hodges's supportability analysis addressed Dr. Shivani's opined marked limits, but failed to address Dr. Shivani's opined moderate[4] limits in his ability to cooperate with others, remember work procedures and instructions, pace, and sustained attention and concentration. (Pl.'s Reply 3–4, ECF No. 11.) It is well established that by failing to make this argument initially, Plaintiff has waived it. *See, e.g., Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008).

Even if the argument was not waived, it would not warrant reversal. ALJ Hodges did not appear to limit her analysis solely to Dr. Shivani's marked restrictions but instead noted the difference between the relatively unremarkable information in Dr. Shivani's notes and the more restrictive limits that he opined. (R. at 577.) In any event, even if ALJ Hodges had limited her analysis as Plaintiff suggests, she ultimately determined that Plaintiff had a marked limit in his

[4] The form completed by Dr. Shivani defined moderate limits as being "[u]nable to function in this area from 11% to 25% of the work day or work week. (R. at 497.)

ability to interact with others and included in Plaintiff's RFC a limit to occasional and superficial interactions with others but no over-the-shoulder supervision or tandem tasks. (*Id*. at 573.) ALJ Hodges also determined that Plaintiff had moderate limits in the three other paragraph B criteria (*i.e*., understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing oneself). ALJ Hodges included in Plaintiff's RFC corresponding limits (*i.e*., understanding, remembering, and carrying out only simple instructions; no production rate pace; and occasional only changes in the work setting.) Thus, even assuming Plaintiff did not waive this contention, he has failed to identify with any specificity what additional limits should have been included in his RFC.

Plaintiff also cites other portions of Dr. Shivani's notes and to his own hearing testimony and contends that and contends that they supported Dr. Shivan's opined limits. (Pl.'s Statement of Errors 11–12, ECF No. 8.) But when substantial evidence supports an ALJ's determination, it will not be disturbed even if other evidence could support a different conclusion. *Emard*, 953 F.3d at 849.

**2. Consistency**

ALJ Hodges also gave several reasons for determining that Dr. Shivani's opinion was inconsistent with other record evidence.

First, ALJ Hodges explained that Dr. Shivani's opined limits were inconsistent with Plaintiff's reports of symptoms to other providers. (R. at 577.) Substantial evidence supports that explanation. During reviews of symptoms conducted by other providers, Plaintiff routinely reported that he had no depression, anxiety, sleep disturbances, alcohol abuse, suicidal thoughts, or mood swings. (*Id*. at 385, 382, 377, 374, 370, 422, 801.) He also denied having difficulty concentrating, remembering, or making decisions. (*Id*. at 373, 369, 441.) Depression screens

administered by other providers also consistently produced scores indicating that Plaintiff had minimal or no depression. (*Id*. at 523, 529, 533, 536, 828, 822, 819, 811, 800, 793, 790, 784, 781, 777.)

Second, ALJ Hodges observed that "[o]verall, [Plaintiff's] mental status examinations showed findings within normal limits." (*Id*. at 577.) Substantial evidence likewise supports that observation. During examinations with other providers, Plaintiff was found to be active and alert; oriented to time, place and person; and with a normal mood and affect. (*Id*. at 386, 382, 378, 374, 370, 442.) He was also described as alert and oriented; cooperative; and with intact cognitive function, good eye contact, good judgment and insight, and a full range of mood/affect. (*Id*. at 524, 801.) At another examination, Plaintiff was found to be cooperative, with good eye contact, and with no suicidal ideations or delusions. (*Id*. at 530.) Yet another exam found that he had a full range of mood/affect. (*Id*. at 537.)

Plaintiff contends that ALJ Hodges improperly "relied on treatment notes from non-mental health providers . . .", including a November 2025 gastroenterology record, which he contends was after his date last insured. (Pl.'s Statement of Errors 14–15, ECF No. 8.) He further contends that "it does not make logical sense" for an ALJ to rely on findings from a gastroenterologist in this context, and that ALJ Hodges should have acknowledged that Dr. Shivani was his sole mental health provider. (Pl.'s Reply 4–5, ECF 11.)

But an ALJ's determination must be based on all relevant evidence in a claimant's case file, not just evidence from specialists who treat the condition at issue. §§ 404.1545(a)(1); 416.945(a)(1). That includes medical evidence from all types of providers. *See Baum v. Comm'r of Soc. Sec. Admin.*, 1:25-cv-01775, 2026 WL 1753609, at * 6 (N.D. Ohio June 12, 2026) (finding ALJ did not err by comparing a mental health provider's opinion to other physical

providers' examination findings when assessing consistency). Although specialization is a factor that an ALJ must consider when evaluating a medical opinion, the regulations do not require an ALJ to expressly discuss it. §§ 404.1520c(b)(2); 416.920c(b)(2).

Moreover, ALJ Hodges's did not rely solely on the gastroenterologist's note. Rather, she stated that "[o]verall, [Plaintiff's] mental status examinations showed findings within normal limits." (*Id*. at 577.) That accurately described the record, which contains unremarkable mental status examination findings from various other providers, including, but not limited to, Plaintiff's gastroenterologist. And even if that November 2025 note postdated Plaintiff's date last insured and, therefore, had limited relevance to his DIB application, it remained relevant to his SSI application.

ALJ Hodges had a third reason for finding that Dr. Shivani's opinion lacked consistency. Specifically, ALJ Hodges determined that Dr. Shivani's statements about Plaintiff's inability to maintain employment with the same employer were inconsistent with Plaintiff's history of maintaining employment for several stretches of time, the latest of which ended in 2020. (*Id*. at 577.) Because those jobs predated Plaintiff's alleged disability onset date of January 31, 2022, this evidence was of limited relevance. Nevertheless, that employment history was only one of several reasons for ALJ Hodges's consistency determination. The undersigned thus cannot find that ALJ Hodges reversibly erred by discussing that employment history.

In sum, the record supports ALJ Hodges' determination that Dr. Shivani's opinion was insufficiently supported by his own treatment notes and inconsistent with the broader record. Plaintiff's contention of error, therefore, lacks merit.

## V. RECOMMENDED DISPOSITION

Accordingly, for all the reasons contained herein, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE